GRAHAM v. OREGON R. & NAV. CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

No. 123.

1. EVIDENCE—COMMUNICATIONS BETWEEN AGENTS.

In an action for breach of a contract, communications between respondent's agents were inadmissible to affect libelant.

2. CONTRACTS—EXECUTION—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to show that libelant and respondent made an agreement for an exclusive interchange of traffic for three years between libelant's steamships and respondent's railroad.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 145 Fed. 718.

Thomas D. Rambaut and J. Parker Kirlin, for appellant.

Maxwell Evarts, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The question in this case is whether the libelant and the respondent made an agreement for an exclusive interchange of traffic for the term of three years between the libelant's line of steamships, running between Portland, Or., and the Orient, and the respondent's railroad, running to Portland. The libelant did establish such a line, and there was an interchange of traffic between it and the railroad from September, 1900, to March or April, 1901, when the respondent put its own line of steamships on the service. The district judge dismissed the libel.

We agree with the libelant that the letter of the respondent's traffic manager, Campbell, dated November 12, 1900, to Judge Cotton, the respondent's general attorney, and the telegrams between Campbell and Miller, respondent's freight agent, dated December 3 and 4, 1900, should have been excluded as transactions between respondent's agents not affecting the libelant in any way. But, excluding these documents from consideration, we still come to the same conclusion as did the district judge. The fair inference to be drawn from the testimony is that the libelant, while contemplating the establishment of his line, was confirmed in his purpose by the confident belief that he could make an exclusive three year traffic agreement with the respondent. Oral negotiations during which each party is thinking principally of the things most important to his own needs and nearest to his own wishes are apt to result in different accounts of what was said. Many, though not all, of the inconsistencies in the testimony may be explained in this way, and in the case of the libelant it is likely that long brooding over his disappointment and loss has disturbed his recollection of the conversations with the respondent's agents.

The conduct of the respondent upon which the libelant greatly relies as a ratification of the contract, even if made without authority by Campbell, throws no light upon the disputed question, because this ratification is just as applicable to a temporary arrangement as to a contract for three years.

Because of the very able and earnest argument made on behalf of the libelant, we will indicate briefly the considerations which lead us to the conclusion that no such contract as the libelant alleges was made. (1) The libelant went to Portland with a view to establishing a line of steamships, and had been encouraged by Mr. Wilcox, president of a flour mills company able to furnish nearly full cargoes, at whose suggestion he approached the respondent. (2) The respondent was at the time negotiating for steamships to replace the Dodwell Line. (3) Campbell, the respondent's traffic manager, with whom the libelant negotiated is not shown to have had authority to make such a contract as is alleged. (4) No contract or memorandum was signed either by the libelant or by Campbell. (5) It is admitted that the signature of the respondent's president must be had to the contract. (6) If a contract had actually been made like the Dodwell contract, originally drawn up by Campbell, which had been in force three years, it would

not have been necessary to consult the law department. (7) If it was· necessary to consult the law department, it is fair to presume that the minds of the parties had not fully met. (8) The libelant made no pro-test against the expression contained in the telegrams inclosed in re-spondent's letter of November 28, 1900, describing the arrangement as "a proposed agreement." (9) In the elaborate correspondence between March 1st and 15th resulting in a termination of all relations, no refer-ence whatever was made to an existing contract for three years. (10) The libelant made no protest against the respondent's conduct as a breach of a concluded contract nor any demand founded upon such a contract until long after. (11) On the contrary, he suggested selling or chartering his steamships to the respondent or retiring from the field as a competitor for a consideration.

The decree is affirmed, with costs.